LENA McNEIL v. JAMES JORDAN, *et al.*

1. BONA FIDE PURCHASER; *Fraud of Grantor.* Where a person holds the position of a *bona fide* purchaser of real estate for a valuable consideration without notice of the original owner's equities, he will not be deprived of his title by proof of fraud practiced by his grantee upon the person executing to such grantee the conveyance thereof.

2. DEED PROCURED BY FRAUD; *Grantor, when Estopped from Denying its Validity.* Where a person who is the owner of and in the actual possession of real estate desires to convey it to her mother, and employs an attorney at law to prepare a deed therefor, and after the deed is drafted by him, she examines and finds it written out in accordance with her directions, and then, at the attorney's request, accompanies him to the office of a notary public to execute it, and at the office the attorney without her knowledge fraudulently produces in the place of the deed already examined, another deed containing his own name as the grantee therein, and the owner supposing the deed so produced to be the identical one which she had previously looked over, without examination of its contents, affixes her signature thereto in the presence of the notary and acknowledges its execution, and then delivers it to the attorney to be deposited by him for record, and the deed is filed by him for record in the office of the register of deeds of the proper county, and thereafter the attorney conveys the premises to innocent persons for value, the owner of the premises so executing the deed is estopped from denying its validity, so as to affect the rights of the subsequent *bona fide* grantees.

3. POSSESSION OF LAND; *Notice; Rule.* While it is the general rule that open, notorious, unequivocal and exclusive possession of real estate under an apparent claim of ownership is notice to the world of whatever claim the possessor asserts, whether such claim be legal or equitable in its nature, yet this rule does not apply to a vendor remaining in possession, so as to require a purchaser from his grantee to inquire whether he has reserved any interest in the land conveyed. Such grantor, though in actual possession, is deemed to hold the same for a temporary purpose, without claim of right, and merely as a tenant at sufferance of the grantee.

4. ADVERSE POSSESSION; *Presumption.* A grantor is not deemed in law to have adverse possession against his grantee or those deriving title from him.

### Error from Cowley District Court.

FEBRUARY 28, 1880, *McNeil* filed the following petition (title omitted) in the district court of Cowley county:

"The plaintiff states that on the first day of January, 1880, she became, by a conveyance thereof, of that date, in writing, the owner in fee simple of the following-described real estate, situated in the county of Cowley, state of Kansas, to wit, lot numbered eight, in block numbered one hundred and sixty-seven, in the city of Winfield, and ever since has been and now is the owner in fee simple of said real estate, a true copy of which said conveyance is hereto annexed, marked 'Exhibit A,' and made a part of this petition; that on the 26th day of January, 1880, she entered upon and took actual possession of said real estate, and thence hitherto has continuously resided thereon, and is now residing thereon, and is now and ever since the said 26th day of January, 1880, has been in the actual and exclusive possession, and actual and open occupancy of said premises as a place of residence; that on the 26th day of January, 1880, the plaintiff being then desirous of conveying said real estate to one Martha E. McNeil, employed the defendant, Charles H. Payson, who then and there represented himself to the plaintiff to be an attorney at law, and a competent and practical conveyancer, to draw a deed of conveyance conveying said real estate from the plaintiff to the said Martha E. McNeil; and on said date the said Payson, in pursuance of said employment, made out and submitted to the plaintiff for examination and approval a deed of general warranty, which said instrument by its terms purported to be and was in fact a conveyance of the said real estate from the plaintiff to the said Martha E. McNeil; that plaintiff expressed to said Payson her satisfaction with said instrument, and then at his request accompanied him to the office of Henry E. Asp, a notary public within and for said county of Cowley, for the purpose of signing said instrument and acknowledging the execution of the same before said Henry E. Asp, as such notary public; that upon arriving at the office of said notary public, the said Payson produced an instrument in writing which he stated to plaintiff was the conveyance aforesaid, and requested her to sign her name thereto; that, relying upon the integrity and good faith of the said Payson, and believing the instrument then by him produced for her signature to be the identical instrument which he had been by her employed to prepare, and had prepared and submitted to her as aforesaid, for the conveyance by her of said real estate to the said Martha E. McNeil as aforesaid, she affixed her signature thereto, in the presence of said notary, without any examination thereof, and then and there, to and

before said notary public, duly acknowledged the execution
of said instrument, and delivered the same to the said Payson
to be by him for her filed for record in the office of the reg-
ister of deeds of said county of Cowley, without, after having
so signed said instrument, made any examination thereof pre-
vious to having acknowledged the execution of the same,.
and so delivering the same to said Payson, but relied through-
out upon the good faith and integrity of the said Payson, and
believed at the time she signed said instrument, and acknowl-
edged the execution thereof, and delivered said instrument to-
said Payson to be by him filed for record, that said instru-
ment was the identical conveyance which he had been em-
ployed to prepare, and had prepared and submitted to her
for examination and approval as aforesaid.

"But the plaintiff avers that the said instrument which
the said Payson procured her to sign and acknowledge before
the said Henry E. Asp, notary public, as aforesaid, on the·
26th day of January, 1880, as aforesaid, was not and did not
purport to be the instrument that the said Payson then and
there stated it to be as aforesaid, and that this plaintiff then
and there believed it to be as aforesaid, but on the contrary
was in terms a deed of general warranty from the plaintiff to·
the said Payson of said real estate, a true copy of which said
instrument is hereto annexed, marked 'Exhibit B,' and made
a part of this petition.

"And the plaintiff avers that in and about his procurement
of her signature and acknowledgment to and of the said in-
strument as aforesaid, the said defendant Charles H. Payson
falsely and fraudulently made to her the statements and rep-
resentations as to the character of said instrument whereby he·
procured her to sign and acknowledge the same as aforesaid,.
he then and there well knowing them to be false and fraud-
ulent, for the purpose and with the intent of thereby cheat-
ing and defrauding her of all and singular her title and
interest in and to the real estate aforesaid, to his own benefit,.
and in violation and disregard of her rights and his duty in
the premises; and that she has never received any consider-
ation of any kind or character for said pretended conveyance
of said real estate to the said Payson, and has never, in any
manner, at any time assented thereto, and did not discover
the aforesaid fraud of the said Payson, or have any knowl-
edge or intimation thereof, until the 23d day of February,·
1880; that on the 27th day of January, 1880, the said Pay-
son filed said pretended deed for record in the office of the·

register of deeds of the said county of Cowley, and procured the same to be therein duly recorded in book P of deeds, at page 85, where the same now appears in apparent force and effect; that on the 27th day of January, 1880, the said Payson executed, acknowledged and delivered to the defendant, James Jordan, an instrument in writing of that date, purporting upon its face to be a mortgage from said Payson to said Jordan, of and upon said real estate, to secure the payment by the former to the latter of the sum of four hundred and eighty dollars, one year thereafter, with interest thereon at the rate of twelve per cent. per annum, from the said 27th day of January, 1880, until paid, which said pretended mortgage was filed for record in the office of the register of deeds of the said county of Cowley, on the 27th day of January, 1880, and duly recorded therein in book N of mortgages, at page 550, and now remains so of record, wholly unsatisfied and of apparent legal force and effect; that the plaintiff never in any manner, at any time, assented to the execution and delivery of said supposed mortgage by the said Payson to the said Jordan, and never discovered that the same had been done, or had any knowledge or intimation thereof, until the 23d day of February, 1880, a true copy of which said supposed mortgage is hereto annexed, marked 'Exhibit C,' and made a part of this petition; that on the 2d day of February, 1880, the said Payson executed, acknowledged and delivered to the defendant George H. Buckman, under the designation of G. H. Buckman, a certain instrument in writing, purporting upon its face to be a deed of general warranty of and to said real estate, from the said Charles H. Payson to the said George H. Buckman, under the name of G. H. Buckman as aforesaid, a true copy of which said pretended deed is hereto annexed, marked 'Exhibit D,' and made a part of this petition; that said last-mentioned supposed deed was filed for record in the office of the register of deeds of said county of Cowley on the 2d day of February, 1880, and duly recorded therein in book P of deeds, at page 106, where the same now remains of record, in apparent legal force and effect; that the plaintiff never in any manner assented to the execution and delivery of said pretended deed by the said Payson to the said Buckman, and never discovered that the same had been done, or had any knowledge or intimation thereof, until the 23d day of February, 1880.

"Wherefore, the plaintiff demands judgment against the

said defendants, and against each of them, that the said supposed deed from herself to the defendant Charles H. Payson be declared void from the beginning, and held for naught; that the said supposed mortgage from the said Payson to the said Jordan be canceled, set aside, and held for naught; that said pretended deed from the said Payson to the said Buckman be cancelled, set aside, and held for naught; that her title to said real estate be cleared from all cloud cast upon it by said several instruments, or either of them; that she recover her costs herein against the said defendants; and that she may have such relief in the premises as in equity the court may deem her entitled to."

To this petition, defendants *Jordan* and *Buckman* separately demurred, which demurrers were overruled by the court and held to be frivolous, and the defendants were refused permission to answer. The case was then brought to this court, and the judgment of the district court reversed. (*Jordan v. McNeil,* 25 Kas. 459.) After the case was remanded to the court below, the defendants were permitted to file answers. Trial had upon the merits, at the November Term, 1881, of the court, without a jury. The court made the following findings:

"1. That each and and all of the allegations of fact stated in the plaintiff's petition are true.

"2. That at the time of the execution and delivery of the mortgage from Payson to the defendant Jordan, set forth in the petition, he, the said Jordan, had no notice or knowledge whatever of the fraud practiced on the plaintiff, by which the said Payson procured the execution and delivery by the plaintiff to himself of the deed mentioned in the petition, or that the plaintiff had or claimed any estate or interest in the premises described therein.

"3. That said mortgage was given to secure an actual loan by the said Jordan to said Payson of the sum of $480, together with interest thereon as specified in said mortgage, and that just before the making of said loan, and the taking of said mortgage as security therefor, the said Jordan examined the records in the office of the register of deeds of Cowley county, Kansas, and ascertained therefrom that the title to said land was in the said Payson; and believing in good faith that the said Payson was the absolute owner thereof in fee simple, and relying on the state of the title to said land as

disclosed by the records of the office of the said register of deeds, he made the said loan to the said Payson and took the said mortgage to secure the same.

"4. That at the time of the execution and delivery of the deed from Payson to the defendant Buckman, set forth in the petition, he, the defendant Buckman, had no notice or knowledge whatever of the fraud practiced on the plaintiff by which the said Payson procured the execution and delivery by the plaintiff to himself of the deed mentioned in the petition, or that the plaintiff had or claimed any estate or interest in the premises described therein.

"5. That said deed from said Payson to said Buckman was executed and delivered by the said Payson to the said Buckman for the consideration of $200 in cash actually paid at the time by the said Buckman to the said Payson, and that said sum of $200 was an adequate price for said land, subject to the incumbrance of the said mortgage from the said Payson to the said Jordan, of which the said Buckman had notice at the time of the said conveyance to himself; and that just before the taking of the said conveyance and the payment of the said $200 therefor, the said Buckman examined the records in the office of the register of deeds of said county, and ascertained therefrom that the title to said land was in said Payson, unincumbered except by the said mortgage to the said Jordan, and believing in good faith that the said Payson was the owner thereof in fee simple, and relying on the state of the title to said land as disclosed by the records of the office of the said register of deeds, he paid the said Payson the said $200, and in consideration thereof received the said conveyance of said premises from the said Payson to himself."

And the court declared the following conclusions of law from the foregoing findings of fact:

"1. The plaintiff cannot defeat the conveyance from herself to Payson, although procured by fraud, so as to affect the rights subsequently acquired through Payson under said conveyance by the defendants Jordan and Buckman respectively, for value and without notice of such fraud. And—

"2. The defendants Jordan and Buckman had the legal right to rely on the presumption that the plaintiff's possession of the premises was under Payson, her grantee, and that such possession was not adverse or inconsistent with the title of Payson as evidenced by the recorded conveyance from the

plaintiff to him; and the plaintiff having through her inadvertence executed and acknowledged said conveyance and suffered it to be recorded, thereby placing it in the power of Payson to consummate said fraud upon her, she is estopped from relying upon her possession as evidence to either the defendant Jordan or the defendant Buckman, that she claimed any estate or interest in the premises adverse to the apparent title of Payson under said recorded deed."

Judgment accordingly, to which plaintiff excepted, and brings the case here.

*Hackney & McDonald*, for plaintiff in error.

*G. H. Buckman, F. S. Jennings*, and *A. L. Williams*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The principal questions involved in this controversy are: Was the deed obtained by Charles H. Payson from Lena McNeil absolutely void? Second, if not void, but voidable only, was the actual possession of the premises by Lena McNeil notice to the defendants of the fraudulent title of their grantor? If the deed to Jordan was absolutely void, then it was and is an absolute nullity, and nothing can be founded upon it. It cannot be made the basis of any title. On the other hand, if voidable only, it passed an estate of which Payson became legally seized, defeasible in his hands, but not in the hands of innocent, *bona fide* purchasers under him. On the part of the plaintiff, it is contended that the deed was and is absolutely void, because in fact it was a deed to another grantee than the person intended, and therefore that there was no assent of the mind of the grantor to the creation of the instrument to which her signature was fraudulently obtained, and hence that the writing was not her act. To sustain this position, counsel cite the fraudulent procurement of a deed deposited as an escrow from the depositary by the grantee, (*Everts v. Agnes*, 4 Wis. 343, and 6 id. 453;) the furtively purloining without the knowledge or consent of the maker of a note and mortgage deposited in escrow, (*An-*

*drews v. Thayer*, 30 Wis. 228;) and the cases of deeds obtained by larceny and like means. Secs. 190, 191 of Bishop on Contracts; *Tisher v. Beckwith*, 30 Wis. 55; *Burton v. Boyd*, 7 Kas. 31, and *Ayres v. Probasco*, 14 Kas. 196, are also referred to. The principle announced in the various decisions presented to us by counsel for the plaintiff is not applicable. The question of the assent of the grantor need not be considered now. In this case, it appears from the findings of the court that on the 26th day of January, 1880, Lena NcNeil, at the request of Payson, accompanied him to the office of a notary public, and upon reaching the office signed her name to the deed in the presence of the notary, without any examination, and then acknowledged its execution, and delivered it to Payson to be filed for record. He deposited the deed for record on the next day at 11:30 o'clock A. M., and it was thereupon recorded in the book of deeds in the office of the register. The con-

1. Bona fide purchaser; fraud of grantor.

duct of the grantor of this deed was such as to forbid her to deny its validity so as to affect the rights of persons holding the position of *bona fide* purchasers of the premises for value. Where parties are inattentive and careless in the execution of conveyances of real estate, the law estops them from setting up title as against a *bona fide* purchaser for value under such conveyance. As was said in *Somes v. Brewer*, 2 Pick. 184, cited upon the former hearing in this case, (*Jordan v. McNeil*, 25 Kas. 459:)

"It is a general and just rule, that when a loss has happened which must fall on one of two innocent persons, it shall be borne by him who is the occasion of the loss, even without any possible fault committed by him, but more especially if there has been any carelessness on his part which caused or contributed to the misfortune. A man can scarcely be cheated out of his property, especially of real estate, in such a manner as to give an innocent purchaser a right to hold according to the principles which have been mentioned, without a degree of negligence on his part which should remove all ground of complaint. Suppose him to be prevailed upon by fraudulent representations to execute a deed without asking advice of friends or counsel, he has *locus*

*penitentiæ* when he goes before a magistrate to acknowledge it."

Counsel claim that as the grantor employed a lawyer to draft for her the deed which she intended to execute, and as she examined the contents of it on its first presentation to her, and found it drafted according to her wishes, she had the right to rely implicitly upon the integrity of the lawyer and sign the conveyence produced in the office of the notary by him, without question or examination; that she exercised due caution in examining the deed when first presented, and any further examination was unnecessary. The lawyer who prepared the deed for her was acting as her agent, and she confided in him. If she chose to rely upon his statements and thereby received injury, she must suffer the consequences of her misplaced confidence, rather than an innocent third person. Where a person not illiterate or of feeble mind, possessed of legal capacity to make a contract, executes and acknowledges a deed without ascertaining its character and extent, upon the representations of another, he puts confidence in that person, and if injury ensues to an innocent third person by reason of that confidence, his act is the means of that injury and he ought to answer to it. (*Chapman v. Rose*, 56 N. Y. 137.) Here it appears that the grantor unwittingly fell into the hands of a dishonorable and dishonest lawyer, (*In re Payson*, 23 Kas. 757,) and trusted to his integrity. But he betrayed that trust, and wrongfully obtained her signature and acknowledgment to the deed, conveying the property to himself. This deed was afterward recorded, and the consequences thereof. must fall upon the grantor of the fraudulent deed, rather than upon those who have paid their money upon the faith of the conveyance. The deed, therefore, in our opinion, was not and is not a nullity. It was effectual to pass the estate so that the deed and the mortgage from the fraudulent grantee to defendants, if they may be regarded as *bona fide* purchasers, are valid. (*Bloomer v. Henderson*, 8 Mich. 405; *Burson v. Huntington*, 21 Mich. 415; *Douglas v. Matting*,

*2. Deed procured by fraud; estoppel of grantor.*

29 Iowa, 498; *Putnam v. Sullivan,* 4 Mass. 45; Bishop on Contracts, § 169; *Cook v. Moore,* 39 Tex. 255; *Deputy v. Stapleford,* 19 Cal. 302.)

This brings us to the consideration of the possession of the premises by Lena McNeil at the date of the execution of the mortgage, a subsequent conveyance. Were the defendants notified by such possession of the fraud of their grantor? Were the defendants bound to inquire of Lena McNeil what interest she claimed or represented? We have time and again stated that open, notorious, unequivocal and ex-

3. Possession of land; notice; rule.

clusive possession of real estate under an apparent claim of ownership is notice to the world of whatever claim the possessor asserts, whether such claim be legal or equitable in its nature. (*Johnson v. Clark,* 18 Kas. 164; *School District v. Taylor,* 19 Kas. 292; *Tucker v. Vandermark,* 21 Kas. 263.) This rule, however, does not in the nature of things apply to a vendor remaining in possession. A purchaser from the grantee of the party in possession need not inquire whether such party has reserved any interest in the land conveyed. So far as the purchaser is concerned, the actual occupant's deed is conclusive upon that point. The object of the law in holding possession constructive notice, is to protect the possessor from the acts of others who do not derive their title from him, not to protect him against his own acts, not to protect him against his own deed. There-

4. Adverse possession; presumption.

fore, where a grantor executes and delivers a deed of conveyance to go upon record, he says to the world: "Though I am yet in the possession of the premises conveyed, it is for a temporary purpose, without claim of right, and merely as a tenant at sufferance of my grantee." The great weight of the authorities supports this conclusion. Thus, Wade on Notice says:

"So the possessor may by his own act, in putting upon the record an instrument inconsistent with title in himself, or by executing and delivering such a recordable instrument, be estopped from relying upon his possession as evidence to subquent purchasers that he claims title to the premises. In the case cited, defendant had conveyed the land in question to

one in whom he placed confidence, subject to a secret trust. The deed of conveyance was absolute on its face, and was duly recorded. Relying upon the record, plaintiff purchased the premises from the apparent grantee for value, who, in making the sale, was guilty of a breach of trust. But the plaintiff took without knowledge or notice of the trust, although the defendant, after making the conveyance, remained in possession and openly exercised acts of ownership over the property." (Sec. 299.)

Bigelow on Fraud states:

"The rule of notice by possession does not apply in favor of a vendor remaining in possession, so as to require a purchaser from his grantee to inquire whether he has reserved any interest in the land conveyed. So far as the purchaser is concerned, the vendor's deed is conclusive. Having declared by his deed that he makes no reservation, he cannot afterward set up any secret arrangement by which his grant is impaired." (Pp. 295–6.)

Washburn on Real Property also says:

"Nor will the continued possession by the grantor of land, after the making of his deed, be notice of a defeasance held by him which is not recorded." (Vol. 2, 3d ed., p. 66.)

The following decisions are in accord with these elementary writers: *Van Keuren v. Central Rld. Co.*, 9 Vroom (38 N. J. L.), p. 165; *Newhall v. Pierce*, 5 Pick. 450; *New York Life Ins. Co. v. Cutler*, 3 Sandf. Ch. 176; *Kunkle v. Wolfersberger*, 6 Watts, 126; *Hennesey v. Andrews*, 6 Cush. 170; *Crossen v. Swoveland*, 22 Ind. 434; *Scott v. Gallagher*, 14 Serg. & R. 333; 2 Leading Cases in Eq., pt. 1., p. 118; *Juvenal v. Patterson*, 10 Pa. St. 203. See also 4 Cent. L. J. 122, 124; *Bloomer v. Henderson*, supra; *Deputy v. Stapleford*, supra; *Cook v. Moore*, supra.

In this case, as the defendants had no knowledge of the fraud practiced upon the plaintiff by their grantor, as they examined the records of the office of the register of deeds of Cowley county, and found recorded there the title in fee simple in Payson before they took their conveyances from him or paid out their money, and as in all the matters connected

with their transactions they acted in good faith, they cannot be regarded as other than holding the position of *bona fide* purchasers; and the possession of the land by the grantor of their grantee was, at the most, merely constructive notice to them that she was a tenant at sufferance of her grantee.

Counsel for plaintiff make the further claim that plaintiff held the premises by an adverse possession at the time of the execution of the mortgage and conveyance to defendants, and therefore that Payson could not convey the land. The conclusion already obtained justifies us in saying that the grantor of Payson did not have in law, adverse possession as to *bona fide* purchasers after the execution and recording of her deed. Both the innocent mortgagee and the *bona fide* purchaser had the right to treat her merely as a tenant at sufferance of her grantee, at the execution of the conveyance to themselves.

The judgment of the district court will be affirmed.

All the Justices concurring.